This is a concursus proceeding originally filed in the Second Judicial District Court, Claiborne Parish, Louisiana, and subsequently transferred to the First judicial District Court, Caddo Parish, Louisiana, by agreement of all parties.
The Gulf Refining Company, as owner of oil, gas and mineral leases covering the interests of all owners of minerals in and under certain described property in Claiborne Parish, Louisiana, deposited in the Registry of the Court the sum of Nine Hundred Twelve and 78/100 ($912.78) Dollars, representing royalties accruing from operations on said lands under the provisions of Act 123 of 1922.
The claimants to the fund are Mrs. Mary McKinnon Garrett, widow of J.L. Garrett, deceased, on the one hand, and the children and grandchildren of J.L. Garrett by his first wife, on the other hand.
[1] The property concerned in this suit was acquired by J.L. Garrett during his marriage to Mrs. Mary McKinnon Garrett, and, therefore, belonged to the community which existed by virtue of said marriage. J.L. Garrett died on May 17, 1941, leaving as his heirs a number of children and grandchildren by his first wife, and several children of his second marriage. The children and grandchildren of J.L. Garrett by his first marriage filed a joint answer in this suit claiming the fund at issue adversely to Mrs. Mary McKinnon Garrett. After the death of J.L. Garrett an agreement was entered into between Mrs. Mary McKinnon Garrett and all the children and grandchildren of J.L. Garrett, which agreement was dated the 17th day of June, 1941. The Succession of J.L. Garrett was opened and the heirs sent into possession by judgment of the 5th day of July, 1941, such judgment and the agreement of June 17th, being filed for record on the same day, i.e. July 5th, 1941.
The entire issue in this case as between the claimants to the fund involved must be determined by the interpretation of the instrument of June 17, 1941. This agreement, after naming the sole and only heirs of John L. Garrett, deceased, provides: "The above appearers do hereby agree, without any revocation, to the use of the property described herein below for the use of Mrs. Mary McKinnon Garrett, during her entire lifetime, and from which she shall have the revenues, and at the *Page 634 
death of the said Mrs. Mary McKinnon Garrett said property will be divided under the laws of the State of Louisiana, it being understood that at this date the said Mrs. Mary McKinnon Garrett owns one half of the said property and that the other half was inherited by these appearers on the death of said John L. Garrett, but that said property is community property of the said John L. Garrett and Mrs. Mary McKinnon Garrett and by that fact an undivided one half belongs to her and one half belonged to said John L. Garrett and now to your appearers, and that at the death of the said Mrs. Mary McKinnon Garrett her heirs will inherit her undivided one half of said property, which property is hereby described as follows, to wit: * * *."
A further provision of the agreement reads as follows: "It is further understood and agreed that the said Mrs. Mary McKinnon Garrett shall have full charge of said above described real estate, but shall not attempt to encumber said property or sell same to disadvantage of your appearers."
The lower court interpreted the instrument in question as the conveyance of an usufruct, and held that the usufruct was limited to the estate actually in being at the time of the creation of the usufruct by Article 552 of the Civil Code. Since there was no production from the land at the time of the execution of this agreement, the court held that the usufructuary was excluded from the enjoyment of revenues accruing from the production of oil on the property.
[2] We feel that the tendency to look beyond the provisions of the agreement between the parties complicates what is otherwise a simple proposition of interpretation. Definition of the agreement as an agreement of usufruct immediately necessitates the consideration of determining the nature and character of the usufruct and reading into the agreement codal provisions and judicial pronouncements involving a multitude of points foreign to the real sense and purpose of the agreement. Under the provisions of Article 1945 of the Civil Code it is the duty of the courts to give legal effect to contracts according to the true intent of all the parties, which intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences.
Confining our consideration of the matter before us to a careful examination of the agreement between the parties, we are of the opinion that the words of the contract are clear and explicit.
[3] The agreement clearly and definitely provides that Mrs. Mary McKinnon Garrett was given certain rights with reference to the property described, which may be briefly stated as follows: The use of the property during her lifetime; the revenues from the property; full charge of the real estate described.
In consideration of the above enumerated rights, Mrs. Garrett bound herself not to encumber or alienate the property to the disadvantage of the other parties to the agreement.
It is to be observed that the rights granted went beyond the use of the property and specifically comprehended the enjoyment of the revenues arising from the property during the entire lifetime of Mrs. Mary McKinnon Garrett. Regarded in this light as a plain contract, the interpretation of the instrument presents no difficulty. Only by wandering from the four corners of the instrument itself and the reasonable interpretation thereof does the matter present involved questions of interpretation.
Since "revenue" indisputably includes rents, and since royalties under the well-established jurisprudence of Louisiana must be regarded as rents, we can only conclude that royalties accruing from the production of oil, under the plain provisions of the agreement at issue, belong to Mrs. Mary McKinnon Garrett during her lifetime.
[4] If additional evidence as to the intent of the parties to the agreement were needed to substantiate the conclusion at which we have arrived, we feel that such evidence is furnished by the actions of the parties themselves with reference to another lease on a portion of the property covered by the agreement. A twenty-acre tract under lease to the Ohio Oil Company had produced oil over a period of years. After the agreement of June 17th, 1941, the Ohio Oil Company prepared a division order, which order was duly executed by all the parties to this agreement, and provided under its terms that Mrs. Mary McKinnon Garrett was to receive all royalties either accrued or which might accrue in future from the leased property in question. *Page 635 
Certainly this action clearly indicates that the parties themselves placed the same interpretation upon the intent and purpose of the agreement that we have accorded in this opinion.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the claim of Mrs. Mary McKinnon Garrett to the fund deposited in the Registry of the court be, and it is recognized, and said fund is hereby decreed to be the property of the said Mrs. Mary McKinnon Garrett in entirety.
All costs of this proceeding are to be paid by the defendants-appellees.